# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TIFFANY K. COLEMAN-WEATHERSBEE, individually, and on behalf of others similarly situated,

        Plaintiff,

  v.

MICHIGAN STATE UNIVERSITY FEDERAL CREDIT UNION and DOES 1 through 100,

        Defendants.

Case No.:  5:19-cv-11674-JEL-DRG

Honorable Judith E. Levy

Magistrate Judge David R. Grand

**PLAINTIFF TIFFANY K. COLEMAN-WEATHERSBEE'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Philip J. Goodman (P14168)
Of Counsel
Hubbard Snitchler & Parzianello
801 W. Ann Arbor Trail, Ste 240
Plymouth, MI 48170
Telephone:  248-760-2996
PJGoodman1@aol.com

Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, California 90049
Telephone: 310-395-2988
Facsimile: 310-395-2088
Taras@Kicklawfirm.com

Richard D. McCune
McCune Wright Arevalo, LLP
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone:  909-557-1250
Facsimile:   909-557-1275
Email:  rdm@mccunewright.com

Attorneys for Plaintiff Tiffany K. Coleman-Weathersbee and the Class

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff Tiffany K. Coleman-Weathersbee hereby moves this Honorable Court for entry of an Order:

1. Granting final approval of the Settlement Agreement reached between Plaintiff and Defendant attached as Exhibit 1 to the Declaration of Taras Kick in Support of the Unopposed Motion for Final Approval; and

2. Approving Class Counsel's request for award of attorney's fees, litigation costs, and incentive awards.

This motion is made on the grounds that the settlement is the product of arm's-length negotiations by informed counsel and is fair, reasonable and adequate. Class Counsel met and conferred with Counsel for Defendant about the motion, and Defendant does not oppose the motion.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the accompanying Declarations of Taras Kick, Richard McCune, Philip Goodman, Arthur Olsen, Robert Weissman, James Hunsanger, and Brian Young, other documents and papers on file in this action, and such other materials as may be presented before or at the hearing on this motion, or as this Honorable Court may allow.

## LOCAL RULE 7.1(f) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(f), Plaintiff requests oral argument before this Court on her Motion for Final Approval of Class Action Settlement.

## LOCAL RULE 7.1(a) CERTIFICATION OF CONCURRENCE

Pursuant to Local Rule 7.1(a), Plaintiff's counsel certifies that he has conferred with Defendant's counsel prior to filing this Motion and Defendant does not oppose this motion.

Dated: June 11, 2020                    Respectfully submitted,


/s/ Richard D. McCune
Richard D. McCune, Pro Hac Vice
rdm@mccunewright.com
MCCUNE • WRIGHT • AREVALO LLP
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, California 90049
Telephone: 310-395-2988
Facsimile: 310-395-2088
Taras@Kicklawfirm.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TIFFANY K. COLEMAN-
WEATHERSBEE, individually, and on
behalf of others similarly situated,

        Plaintiff,

  v.

MICHIGAN STATE UNIVERSITY
FEDERAL CREDIT UNION and
DOES 1 through 100,

        Defendants.

Case No.:  5:19-cv-11674-JEL-DRG

Honorable Judith E. Levy

Magistrate Judge David R. Grand

**PLAINTIFF TIFFANY K.
COLEMAN-WEATHERSBEE'S
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

Philip J. Goodman (P14168)
Of Counsel
Hubbard Snitchler & Parzianello
801 W. Ann Arbor Trail, Ste 240
Plymouth, MI 48170
248-760-2996
PJGoodman1@aol.com

Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@Kicklawfirm.com

Richard D. McCune
McCune Wright Arevalo, LLP
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone:  909-557-1250
Facsimile:   909-557-1275
Email:  rdm@mccunewright.com

Attorneys for Plaintiff Tiffany K.
Coleman-Weathersbee and the Class

## CONCISE STATEMENT OF ISSUES PRESENTED

Plaintiff Tiffany K. Coleman-Weathersbee ("Plaintiff") seeks this Court's approval of her Unopposed Motion for Final Approval of the Class Action Settlement, request for attorney's fees, litigation costs and an incentive award.

I.      The legal standard under Federal Rules of Civil Procedure, Rule 23 is met such that the class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

II.      The Sixth Circuit favors the settlement of class action lawsuits, and this settlement meets the factors considered by the Sixth Circuit in approving such settlements.

    a.  In terms of risk, although Plaintiff believes the liability in this case is strong, there are significant risks to recovery if this litigation proceeds.

    b.  Given the complexity of class actions, it is likely that the case could last years more if the settlement is not accepted, resulting in significant costs to the Parties.

    c.  Meaningful discovery has taken place, including sworn production of hundreds of pages of documents, Rule 30(b)(6) depositions, the deposition of the class representative, and briefing of a motion to dismiss. This has provided the Parties will a significant understanding of the case to gauge its strengths and weaknesses and the adequacy of the settlement.

    d.  Class Counsel in this case are experienced in litigating consumer class actions and other complex matters, and have particular expertise in overdraft fee class actions. They have investigated the factual and legal issues raised in this case, and are in favor of the settlement.

e.  All of the settlement negotiations in the cases were conducted at arm's-length, and the settlement was the result of a mediator's proposal made by the Hon. Gerald E. Rosen (Ret.) after an all-day mediation session.

f.  No objections to any aspect of the proposed settlement have been made to date, and only six class members have opted-out, meaning more than 99.98% of the class members who received notice elected to remain in the proposed settlement.

g.  In this settlement, class members will receive millions of dollars in back fees and the credit union will provide its members with improved disclosures saving millions of dollars of fees in the future.

h.  The claims administrator's notice program, approved by this Court, had a success rate of 98%.

i.  Moreover, the requirements of Fed. R. Civ. P. 23(e)(2) have been met.  With regard to the first prong, the effectiveness of the method of distribution of the relief to the class members, as stated, class members who remain MSUFCU members at the time of the distribution will receive a credit to their accounts, and those class members who are not members of Defendant shall be sent a check. With regard to the second prong, attorneys' fees, as already discussed, the amount being sought is well within the range awarded in cases such as this one. With regard to the third prong, other agreements, there are none. Finally, with regard to the last prong, the Class Members will receive awards *pro rata* to their damages.

6

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen.*

    *Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

# TABLE OF CONTENTS

*Page*

I.     SUMMARY ................................................................................ - 1 -

II.    THE HISTORY OF THIS CASE ............................................... - 3 -

III.   TERMS OF THE SETTLEMENT ............................................ - 4 -

       A.    Class Definition ............................................................. - 4 -

       B.    Benefits to the Class Members ...................................... - 5 -

       C.    Payments to Claimants .................................................. - 6 -

       D.    *Cy Pres* Distribution ...................................................... - 7 -

       E.    The Attorneys' Fees ...................................................... - 7 -

       F.    The Class Representative Service Award and Costs ................. - 14 -

IV.    ARGUMENT .......................................................................... - 15 -

       A.    The Legal Standards for Final Approval of a Class Action

             Are All Met .................................................................. - 15 -

             1.    The Plaintiff's Likelihood of Ultimate Success on

                   the Merits Balanced Against the Relief Offered in

                   the Settlement ...................................................... - 17 -

             2.    The Complexity, Expense, and Likely Duration of

                   the Litigation ....................................................... - 18 -

             3.    The Stage of the Proceedings and the Amount of

Discovery Completed .......................................................... - 19 -

4.   Judgement of Experienced Counsel ................................. - 20 -

5.   The Risk of Fraud or Collusion ........................................ - 20 -

6.   Objections Raised by Class Members ............................. - 21 -

7.   Public Interest also Supports Final Approval .................. - 21 -

8.   Notice to The Settlement Class Satisfied FRCP

Rule 23 .................................................................... - 22 -

9.   The Other Factors Set forth in Rule 23(e)(2) ................... - 23 -

B.   The Proposed Settlement Class Should Be Finally

Certified ....................................................................... - 23 -

# TABLE OF AUTHORITIES

*Page(s)*

Cases

*Am. Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898,
    2012 U.S. Dist. LEXIS 25265 at *59 (N.D. Ill. Feb. 28, 2012) ............... - 14 -

*Been v. O.K. Indus., Inc.*,
    No. CIV-02-285-RAW, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) - 11 -

Behrens v. Wometco Enters., Inc.,
    118 F.R.D. 534 (S.D. Fla. 1988) ............................................................ - 18 -

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................... - 8 -

*Brent v. Midland Funding, LLC*,
    No. 3:11- CV-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ........ - 18 -

City of Detroit v. Grinnell Corp.,
    356 F. Supp. 1380 (S.D.N.Y. 1972) ...................................................... - 18 -

*Dallas v. Alcatel-Lucent USA, Inc.*,
    2013 WL 2197624 (E.D. Mich. 2013) .................................................... - 11 -

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) .................................................................. - 22 -

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) .................................................................. - 8 -

*Gen. Motors*,
    315 F.R.D ................................................................................................ - 19 -

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ................................................................ - 22 -

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ...................................... - 21 -

# TABLE OF AUTHORITIES (cont.)

*Page(s)*

Hillson v. Kelly Services, Inc.,
    2017 WL 279814 (E.D.Mich. January 23, 2017) ..................................- 21 -

*Howes v. Atkins*,
    668 F. Supp. 1021 (E.D. Ky. 1987) .........................................................- 10 -

*In re AremisSoft Corp., Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ................................................................- 10 -

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................- 13 -

*In re Cardizem CD*,
    218 F.R.D. (E.D. Mich. June 29, 1999)........................................ - 15 -, - 21 -

*In re CMS Energy ERISA Litig.*,
    No. 02-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006)...............- 14 -

*In re Currency Conversion Fee*,
    263 F.R.D. 110.......................................................................................- 18 -

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ...................................... - 8 -, - 13 -, - 19 -

*In re Lloyds' Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................- 23 -

*In re Merry-Go-Round Enter., Inc.*,
    244 B.R. 327 (Bankr. D. Md. 2000) ......................................................- 11 -

*In re Nutella Mktg. & Sales Practices Litig.*,
    589 Fed. Appx. 53 (3d Cir. 2014)..........................................................- 10 -

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen.*
    *Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ............................................................. passim

*IUE-CWA v. GMC*,
    238 F.R.D. 583 (E.D. Mich. 2006)...............................................- 15 -, - 20 -

# TABLE OF AUTHORITIES (cont.)

*Page(s)*

*Kritzer v. Safelite Solutions, LLC*,
  2012 U.S. Dist. LEXIS 74994, *28-29 (S.D. Ohio 2012) ....................... - 10 -

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010.) .................................................... - 9 -

*Merkner v. AK Steel Corp.*,
  2011 WL 13202629 (S.D. Ohio Jan. 10, 2011) ....................................... - 13 -

Pinto v. Princess Cruise Lines,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) .................................................... - 10 -

*Poertner v. Gillette Co.*,
  618 Fed. Appx. 624 (11th Cir. 2015) ...................................................... - 10 -

*Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*,
  No. 05-445 (C), 2009 WL 2836508 (W.D. Okla. July 30, 2009) ............ - 11 -

Ramey v. Cincinnati Enquirer, Inc.,
  508 F.2d 1188 (6th Cir. 1974) ................................................................ - 12 -

Rawlings,
  9 F.3d ..................................................................................................... - 8 -

*Stanley v. U.S. Steel Co.*,
  No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ...... - 13 -, - 14 -

Van Horn v. Nationwide Property & Cas. Ins. Co.,
  436 F. App'x 496 (6th Cir. 2011) ........................................................... - 13 -

*Wells v. Allstate Ins. Co.*,
  557 F. Supp. 2d 1 (D.D.C. 2008) ............................................................ - 11 -

*Westcott v. FedEx Ground Package Sys. (In re FedEx Ground Package Sys.)*, No.
  3:05-MD-527 RLM (MDL 1700),
  2017 U.S. Dist. LEXIS 64936 at *24 (N.D. Ind. Apr. 28, 2017) ............. - 14 -

Williams v. Vukovich,
  720 F.2d 909 (6th Cir. 1983) ................................................................. - 20 -

## TABLE OF AUTHORITIES (cont.)

*Page(s)*

*Worthington v. CDW Corp.*,
  No. C-1-03-649, 2006 WL 8411650 (S.D. Ohio May 22, 2006) .............- 11 -

Rules

Fed. R. Civ. P. 23 ............................................................................. passim

Fed. R. Civ. P., Rule 36(b)(6) ................................................................- 4 -

Regulations

12 C.F.R. § 1005.17 ..............................................................................- 1 -

Other Authorities

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.
  2002) .......................................................................................- 18 -

Manual for Complex Litigation (4th ed.) § 21.71 ...............................- 9 -

## MEMORANDUM

## I.    SUMMARY

This is a putative class action alleging that Michigan State University Federal Credit Union ("MSUFCU ") improperly charged Non-Sufficient Funds ("NSF") fees on the same item more than once when its terms did not allow it to do so, and also charged overdraft fees based on what it contended it called the "available balance" in customer accounts (*i.e.*, a subset of the actual account balance from which money has been deducted by placing holds on funds earmarked for pending transactions which have not yet posted) rather than the actual balance (*i.e.*, the money actually in the account, sometimes called "ledger balance"), allegedly in violation of the terms of its contracts governing the overdraft program for certain types of transactions.  Plaintiff also alleged that Defendant violated Regulation E, 12 C.F.R. § 1005.17 ("Reg. E"), by enrolling credit union members in its overdraft program for subject transactions without first complying with the requirements of Reg E, a predicate for being allowed to charge such overdraft fees.  MSUFCU disputes all of Plaintiff's contentions.

After engaging in meaningful written discovery and depositions, the parties agreed to mediate the matter before the Hon. Gerald E. Rosen (Ret.) of JAMS. The proposed settlement is the result of that mediation before Judge Rosen, the parties having accepted a mediator's proposal made by Judge Rosen on December 9, 2019. There are four separate benefits under the proposed settlement, and the Total Value of the settlement is $10,488,600. This is detailed in Section III.B.

This Court granted preliminary approval of the proposed settlement in an

Order dated March 23, 2020, finding preliminarily that the class as defined in the proposed settlement agreement meets all of the requirements for certification of a settlement class under the Federal Rules of Civil Procedure and applicable case law (Preliminary Approval Order ["Order"], Docket No. 28, ¶ 2), that the proposed settlement falls within the range of reasonableness for potential final approval  (Order ¶ 8), and that the proposed settlement is the product of arm's length negotiations by experienced counsel. (*Id.*) The Court also held that for purposes of this settlement, "that the litigation…raise[s] issues of 1aw and fact common to the claims of the class members, and these common issues predominate over any issues affecting only individual members of the settlement classes, that the claims of Tiffany K. Coleman-Weathersbee (the "Named Plaintiff") are typical of the claims of the settlement classes, and that a class action is superior to other methods available for adjudicating the controversy." (Order ¶ 7.)

This Court also found that the methods of giving notice prescribed in the Settlement Agreement meet the requirements of the Federal Rules of Civil Procedure and due process, are the best notice practicable under the circumstances, shall constitute due and sufficient notice to all persons entitled thereto, and comply with the requirements of the Constitution of the United States; and, ordered that notice of the proposed settlement be served on class members. (*Id.* ¶ 9.)

Plaintiff can now report that the notice program ordered by this Court has been very successful, and Plaintiff therefore now presents the matter for final approval.  Specifically, as evidenced by the contemporaneously filed declaration of Brian Young of Epiq, notice of this proposed class action settlement was sent to

the 35,069 unique class members, and had a successful deliverable rate of 98%. (Declaration of Brian Young of Epiq dated June 11, 2020 ("Epiq Decl.") ¶¶ 6, 18.)

To date, not a single class member has objected to any aspect of the proposed settlement, despite 2,110 class members having taken the time to make a claim, and only six class members have elected to opt out of the settlement being presented to this Court. (*Id.* ¶ 22, 25, 26.)  This means that more than **99.98**% of the class members have elected to remain in the proposed settlement. [1]

In sum, the proposed settlement of this class action is an excellent result for class members, and class members' reaction to it to date has been very favorable.

## II.   THE HISTORY OF THIS CASE

Plaintiff filed the Complaint on June 6, 2019.  (Dkt. No. 1.)  The Complaint alleged that MSUFCU had breached its contracts with its customers by charging overdraft fees for transactions which, to be completed, required less money than was already in the customers' actual balances, and by charging multiple Non-Sufficient Funds ("NSF") fees on the same electronic transaction.  (Compl. at ¶¶ 2-4.)  It also alleged claims violations of Regulation E of the Electronic Fund Transfer Act, breach of the covenant of good faith and fair dealing, unjust enrichment/restitution, and money had and received.  (*See* Dkt. No. 1.)  On August 26, 2019, MSUFCU moved to dismiss the Complaint, arguing that the contracts at issue for its overdraft program unambiguously disclosed that it uses a lesser balance, which it called the available-balance method, to determine overdrafts, and

---

[1] The deadline to make a claim is June 13, the deadline to opt-out was June 8, and the deadline to object is June 26.  Plaintiff will provide final statistics in advance of the final approval hearing.

that it was permitted to assess multiple NSF fees for the same transaction based on the language at issue in this case.  (Dkt. No. 10.)  Plaintiff opposed the motion on September 17, 2019, and MSUFCU replied October 1, 2019.  (Dkt. Nos. 15-18.)

Regarding discovery, on October 7, 2019, Plaintiff served her first set of requests for production on MSUFCU.  MSUFCU provided its objections and responses on November 12, 2019 and produced approximately 796 pages of documents which Plaintiff's counsel reviewed.  MSUFCU requested documents from Plaintiff on November 6, 2019.  (Kick Decl. ¶ 11.) Plaintiff provided her objections and responses, along with approximately 298 pages of documents, on November 13, 2019.  (*Id*.)  Plaintiff noticed MSUFCU's Fed. R. Civ. P., Rule 36(b)(6) deposition for November 15, 2019, and deposed two MSUFCU witnesses, Samantha Amburgey, its Chief Information Officer, and Lera Ammerman, its Chief Operating Officer.  (*Id*.)  MSUFCU noticed Plaintiff's deposition for November 14, 2019. (Kick Decl. ¶11.) Plaintiff sat for her deposition that day. (*Id*.)

Following the depositions, the parties agreed to mediate their claims before the Hon. Gerald E. Rosen (Ret.).  The mediation took place on December 9, 2019 in New York.  The parties were able to reach a settlement during the mediation based on a mediator's proposal.  At all times negotiations were non-collusive and arm's length, and presided over by Judge Rosen.  (Kick Decl. ¶ 12.)  It is the settlement now being brought to this Court for Final Approval. (*Id*.)

## III.   TERMS OF THE SETTLEMENT

### A.   Class Definition

The Court conditionally certified the four following class definitions on

- 4 -

March 23, 2020. The "Sufficient Funds Class", which is those members of Defendant who between June 6, 2013 and December 9, 2019, paid an overdraft fee on a Sufficient Funds Damage Transaction that was not refunded.  (Order ¶ 2.)  A "Sufficient Funds Damage Transaction" was the subject of an overdraft fee when the account had a positive balance and which was not refunded. (*See* Declaration of Taras Kick In Support of Motion For Final Approval ("Kick Decl."), Ex. 1, Settlement Agreement, at ¶ 1(cc), (hereafter "Settlement Agreement" or "SA").) The "Multiple NSF Fees on a Single Item Class", which is those members of Defendant who from June 6, 2013 through December 9, 2019, were assessed more than one NSF fee on a single payment item that was not refunded.   (Order ¶ 2; SA ¶ 1 (q).) The "Pre-Litigation Regulation E Class", which is those members of MSUFCU who from June 6, 2013 through June 5, 2019, paid an overdraft fee on a debit card or ATM transaction that was not refunded. (Order ¶ 2; SA ¶ 1 (u).)   The "Post-Litigation Regulation E Class", which is those members of Defendant who from June 6, 2019 through December 11, 2019, paid an overdraft fee on a debit card or ATM transaction that was not refunded. (Order ¶ 2; SA ¶ 1 (w).) Additionally, if a credit union member paid an overdraft fee on a debit card transaction after December 12, 2019, before re-opting into the revised Reg E contract, this fee will be refunded. (Order ¶ 2.)

### B.    Benefits to the Class Members

There are four different benefits under the proposed Settlement Agreement. First, MSUFCU will pay five million two hundred and one thousand ninety-six dollars ($5,201,096.00), with no reversion of any residue to MSUFCU.  (SA ¶

1(aa).) Second, effective December 12, 2019, Defendant stopped assessing overdraft fees on Reg E transactions and will not assess them unless and until a member opts-in in compliance with Regulations E and DD, and to the extent Defendant collected such fees during this period, they will be refunded. (SA ¶¶ 3,4.)  This already to date has saved members $684,015, in full year one will save a total of $1,641,636, and over three years will save members $4,924,908.   (Olsen Decl. ¶ 16.) (*See* Declaration of Arthur Olsen ("Olsen Decl."), at ¶ 16.)  Third, Defendant shall forgive certain fees which were assessed on Class Members but not paid. (SA ¶ 1(dd) and ¶ 5.)  These equal $362,596. (Olsen Decl. ¶ 14.)  Fourth, MSUFCU also has agreed to more clearly disclose its overdraft practices, including defining available balance, describing the impact of holds on available balance, and the possibility of Multiple NSF Fees, and has implemented processes to provide the revised member agreement and disclosures to new and existing members.  (SA ¶2.)   Therefore, even if one were not to attribute any monetary value to the improvement in disclosures, this equals $10,488,600.

### C.      Payments to Claimants

Of the $5,201,096 Settlement Fund, $2,500,000 is allocated to the Sufficient Funds Class; $500,000 is allocated to the Multiple NSF Fees on a Single Item Class; $1,451,096 is allocated to the Pre-Litigation Regulation E Class; and, $750,000 is allocated to the Post-Litigation Regulation E Class.   (SA ¶ 13(d)(iv).) Based on this allocation, payments from the "Net Settlement Fund" to the Class Members shall be calculated on a *pro rata* basis, with no claims requirement except for the Pre-Litigation Reg E Class.  (SA ¶ 13(d)(iv) (1), (2), (4), and (5).)

With regard to the members of the Pre-Litigation Reg E Class, each member received a claim form indicating how many Regulation E fees they were assessed, and are permitted to claim up to 25 such assessed fees. (SA ¶ 13(d)(iv) (3).)  To date, 2,110 claims have been made. (Epiq Decl. ¶ 22.)

The manner in which the money will be distributed to class members is very consumer friendly. All class members will be paid by direct deposit into their accounts if they are current MSUFCU credit union members, or will be mailed a check if they no longer have an account with MSUFCU.  (SA ¶ 13(d)(iv)(8) and (9).)  If mailed a check, the Class Member shall have 180 days to negotiate it. (*Id*.)

### D.    *Cy Pres* **Distribution**

No money from this settlement will revert to Defendant. (SA ¶ 13 (d)(v).) Rather, if there is any residue which remains in the Net Settlement Fund, the Settlement provides it go to a charity to be approved by this Court.  (SA ¶ 16.) Plaintiff proposes Public Citizen, a 501(c)(3) non-profit organization, as the *cy pres* recipient in this matter.  The Declaration of Robert Weissman, the President of Public Citizen, is filed concurrently and details Public Citizen's appropriateness as a *cy pres* recipient here. It is dedicated to protecting consumer rights, including ones such as at issue in this case, including work with the CFPB, and work in the Sixth Circuit. (Weissman Decl. ¶¶ 4, 5, 10, 13.)  Further, it has been approved as an appropriate *cy pres* recipient in numerous overdraft fee class actions similar to this one by federal district courts across the country. (Kick Decl. ¶ 20.)

### E.    **The Attorneys' Fees**

The U.S. Supreme Court has long recognized that "a litigant or a lawyer who

- 7 -

recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the Sixth Circuit, the Court may employ either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees in a class action. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016). Courts often prefer the percentage method because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See Rawlings*, 9 F.3d at 515; *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).

Class Counsel apply pursuant to the percentage method. Per the Settlement Agreement, Class Counsel are permitted to apply for one-third of the "Value of the Settlement". (SA ¶ 13(d)(1).) The Notice sent to class members stated, "Class Counsel will request an attorney fee be awarded by the Court of not more than one third of the Value of the Settlement. Value of the Settlement includes the Settlement Fund, refunded Regulation E fees assessed on or after December 12, 2019, and the forgiven overdraft fees." As explained, the Value of the Settlement is $10,488,600, meaning a one-third fee would equal $3,496,200. (Olsen Decl. ¶ 16.) However, Class Counsel apply only for $2 million in attorneys' fees. As a percentage, that equals only 19.1%. If the Value of the Settlement were to be measured at only one-year of savings ($1,641,636) rather than three years, this means a Value of Settlement of $7,205,328, meaning a fee of only 27.8 %. Finally, even if only the money saved to date were to be counted, this equals

$6,247,707, or a percentage fee of 32%, and if nothing but the $5,201,096 of new money portion being paid were counted, this is still only a 39% fee request.

Although the requested fee here is justified even if one were to only consider the $5,201,096 million new cash payment, or only the new cash payment plus $362,596 in waived fees (total $5,563,692), which is a fee request of about 35%, in reality it is more accurate to view the fee request as 19.1% since it is not controversial that the full Value of the Settlement should be counted. Specifically, according to the Federal Judicial Center, "Courts use two methods to calculate fees for cases in which the settlement is susceptible to an objective evaluation. The primary method is based on a percentage of the actual value to the class of any settlement fund **plus the actual value of any nonmonetary relief**." Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) (emphasis added). And according to the American Law Institute, "a percentage-of-the-fund approach should be the method utilized in most common-fund cases, **with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.**" Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010 § 3.13 (emphasis added); *see also* Manual for Complex Litigation (4th ed.) § 21.71 ("In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when class members are all provided cash benefits that are distributed. It is more complicated when class members receive non-monetary or delayed benefits. **In such cases, the judge must determine the value of those benefits.**") (emphasis added); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d

- 9 -

766, 792 n.23 (N.D. Ohio 2010.)  Under this rationale, "[i]n calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, **courts include the value of both the monetary and non-monetary benefits conferred on the Class**." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving percentage of common fund award and finding that "settlement's allocation of benefits was fair" by including "the value of the nonmonetary relief and cy pres award" as "part of the settlement pie"; rejecting objector's argument that analysis of a reasonable attorney fee should "exclud[e] the substantial nonmonetary benefit and the cy pres award") (emphasis added); *In re Nutella Mktg. & Sales Practices Litig.*, 589 Fed. Appx. 53, 57 (3d Cir. 2014) ("[f]or purposes of approving the settlement, an exact figure is not required to evaluate the settlement's non-monetary benefits"; *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 2007) ("Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class.")

In terms of percentages approved, numerous federal courts across the country, including in the Sixth Circuit, routinely approve attorneys' fees of one-third or higher fee in class actions.  (*See, e.g.*, *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, *28-29 (S.D. Ohio 2012) (awarding 52% of settlement fund as fees); *In re AremisSoft Corp., Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund."); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky.

- 10 -

1987) (fee equal to 40% of recovery);  *Dallas v. Alcatel-Lucent USA, Inc*., 2013 WL 2197624, *12 (E.D. Mich. 2013) (noting that "fee awards in class actions average around one-third of the recovery"); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) ("[C]ounsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range"); *Wells v. Allstate Ins. Co*., 557 F. Supp. 2d 1, 7 (D.D.C. 2008) (fees totaling 45% of fund in consumer protection action against insurer based on insurance claim mishandling); *In re Merry-Go-Round Enter., Inc*., 244 B.R. 327 (Bankr. D. Md. 2000) $185 million settlement with a fee award of 40%, or $71 million;  *Cook v. Rockwell Int'l Corp. and The Dow Chemical Co*., 1:90-cv-00181-JLK, Docket No. 2468, filed April, 28, 2017 ($375 million settlement with a fee award of 40%); *Been v. O.K. Indus., Inc*., No. CIV-02-285-RAW, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011), adopted by 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011) (42%; percentage method plus *Johnson* factors applied); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co*., No. 05-445 (C), 2009 WL 2836508 (W.D. Okla. July 30, 2009) (40%).

With regard to percentage fee awards specifically only in <u>overdraft fee class actions</u>, the fee requested here is justified under that prism as well.  Earlier this year, in the Sixth Circuit in another overdraft fee class action, the Court elected to use the percentage of recovery method under which to award fees, and awarded fees of 40%, plus costs. *Pingston-Poling v. Advia Credit Union*, No.: 1:15-CV-1208 (W.D. Michigan January 21, 2020.) Other courts also have awarded 40% or more in overdraft fee class actions. (*See, e.g.*, *Jacobs v. Huntington Bancshares*

*Inc.*, Dkt. No. 11-00090, Lake County Court of Common Pleas (OH), Final Approval Granted June 2, 2017, settlement of $15,975,000.00, and fees awarded of 40%; *Kelly v. Old National Bank*, Dkt. No. 82C01-1012, Vanderburgh Circuit Court (IN), Final Approval Granted June 13, 2016, Settlement of $4,750,000.00, and fees awarded of 40%; *Gunter v. United Federal Credit Union*, Case No. 3:15-cv-00483-MMD-WGC (D. Nev.), in which the district court, by order dated June 4, 2019, a class action in which the Court awarded attorney's fees of 47.6%, plus reimbursement of litigation costs; *Hernandez v. Point Loma Credit Union*, Case No. 37-2013-00053519-CU-BT-CTL (Cal. Super. Ct. for the County of San Diego), in which the superior court, by order dated September 7, 2017, awarded attorney's fees of 49.6%, plus reimbursement of costs.) (McCune Decl., at ¶¶ 29-32.)

Finally, in the Sixth Circuit, in reviewing the reasonableness of the requested award, district courts review what are known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class;
> (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974).

Each of these six *Ramey* factors strongly supports the award of the requested fee: (1) the value of the class benefit here is real, not illusory. It is over $5,563,692 in cash and waived fees, plus savings of $4,924,908 in fees, meaning a total of more than $10 million; (2) the hourly rate and time spent by Plaintiff's counsel on

this matter is set forth in the Class Counsel's accompanying declarations, and is about five hundred sixty thousand dollars, and therefore requires a multiplier well within those permitted in the Sixth Circuit; [2] (3) the services were undertaken on a contingent basis, with no guarantee of payment; (4) regarding society's stake, as set forth in the complaint, the Consumer Financial Protection Bureau has identified overdraft fees as costing consumers billions of dollars per year, and in need of better disclosure; (5) the litigation was complex, involving the intersection of consumer class actions with banking laws, and included potential issues of federal preemption; and (6) the result obtained in this matter speaks to the skill involved, obtained as it was against a sophisticated defense firm.

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04. Here, Plaintiff's Counsel have prosecuted the Action entirely on a contingent basis, knowing that it could possibly last for four or five or more years, require the expenditure of thousands of attorney hours and substantial expenses. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at

---

[2] Courts routinely award substantial positive multipliers when considering factors such as these. (*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *Merkner v. AK Steel Corp.*, 2011 WL 13202629, at *5 (S.D. Ohio Jan. 10, 2011) (finding multiplier of 5.3 "acceptable under the facts and circumstances of this case" and collecting cases awarding multipliers between 4.5 and 8.74);  Although this factor may be viewed as a lodestar cross-check, a cross-check is entirely optional. *See Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional).

*3 (E.D. Mich. Dec. 8, 2009)

### F.    The Class Representative Service Award and Costs

The Class representative in this case, Ms. Coleman-Weathersbee, has been very helpful to this case, and very active in it, and seeks a service award which is valued at approximately $14,674, in the form of the forgiveness of a loan she has with Defendant in that amount, subject to this Court's approval. (SA ¶13(d)(2).) Ms. Coleman-Weathersbee was valuable to this case, always asking questions, preparing for deposition, sitting for deposition, and providing documents. (Declaration of Tiffany K. Coleman-Weathersbee In Support of Motion for Preliminary Approval, Docket 24-6, ¶¶ 2-4; Kick Decl. ¶ 20.) She also attended the mediation in this matter in person despite it being more than five hundred miles from her home, and this alone took three days from her life.  (*Id.*) She estimates she has spent in excess of hundred hours on this matter to date, and is prepared to provide written documentation of this. (*Id.*) The proposed class representative's service award is well within the range of reasonableness. *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding three class representatives $15,000 each for contributions to the case, including providing information to class counsel, reviewing documents, and participating in settlement discussions); *Westcott v. FedEx Ground Package Sys. (In re FedEx Ground Package Sys.)*, No. 3:05-MD-527 RLM (MDL 1700), 2017 U.S. Dist. LEXIS 64936 at *24 (N.D. Ind. Apr. 28, 2017) ("The request for

$15,000 service awards for the class representative is just, fair and reasonable.").[3]

Regarding costs, Plaintiff's litigation costs cumulatively are $102,104.41, and are detailed in Class Counsel's declarations.  (McCune Decl. ¶ 23; Kick Decl. ¶ 17.) "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *In re Cardizem CD*, 218 F.R.D. at 535 (E.D. Mich. June 29, 1999).   Because the Notice to class members stated costs would be capped at $100,000, the amount sought is $100,000. Regarding claims administration, Epiq agreed to cap its costs at $107,494. (Kick Decl. ¶ 19.)

## IV.   ARGUMENT

### A. The Legal Standards for Final Approval of a Class Action Are All Met

Under the Federal Rules of Civil Procedure, class settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  The determination of whether a settlement is fair, reasonable, and adequate "is committed to the sound discretion of the district court." *IUE-CWA v. GMC*, 238 F.R.D. 583, 594 (E.D. Mich. 2006).

Because the circuits implemented the final approval standard through various formulations, effective December 1, 2018, Fed. R. Civ. P. 23(e)(2) was amended to articulate a four-prong test that was intended to harmonize the circuits' varying articulations of the "fair, reasonable, and adequate" standard. Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments.  According to the amended

---

[3] The firms of McCune Wright Arevalo and The Kick Law Firm, APC, the two proposed Class Counsel, have agreed to share equally in the attorneys' fees, and this was disclosed to and approved by the proposed class representative. (Weathersbee-Coleman Decl. ¶ 3.)  Further, lead co-counsel intend to pay ten percent of the fee to local counsel Philip Goodman, who is Of Counsel to the Law Offices of Serling & Abramson, P.C.

Rule 23(e)(2), a settlement is "fair, reasonable, and adequate" if: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided to the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equally to each other.

The December 1, 2018 amendments to Rule 23(e)(2) were not intended to "displace any factor" used by courts to assess final settlement approval, but rather to focus on core substantive and procedural concerns to guide the approval decision. Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The factors in amended Rule 23(e)(2) are consistent with the factors already used by the Sixth Circuit to assess final settlement approval and both sets of factors are addressed in the sections below.  The Sixth Circuit's approval factors are: (i) plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (ii) complexity, expense, and likely duration of the litigation; (iii) stage of the proceedings and the amount of discovery completed; (iv) judgment of experienced trial counsel; (v) nature of the negotiations and the risk of collusion; (vi) objections raised by the class members; and (vii) public interest. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.* ("UAW"), 497 F.3d 615, 632 (6th Cir. 2007).

- 16 -

The Sixth Circuit also recognizes that the law favors the settlement of class action lawsuits. *Int'l Union, United Auto, Aerospace, and Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

### 1.   The Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Relief Offered in the Settlement

The first factor to consider in the Sixth Circuit is the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement. *UAW*, 497 F.3d at 631.  Equally, Rules 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate."

In terms of risk, although Plaintiff does believe the liability in this case is strong, Plaintiff is not unmindful of the risks, and they are real.  (Kick Decl. ¶ 21.) For example, although Plaintiff's Counsel believe the pending Motion to Dismiss should be denied, this Court might disagree.  Further, although Class Counsel believe the likelihood for certification is strong, but there is always some risk in getting consumer class actions certified, even the ones which have the strongest merits for certification.  (*Id*.) And even if the class were certified, Plaintiff still would need to prevail at trial, meaning she would need to prove her proffered interpretation of the contracts at issue in this case are correct. (Id.)

As stated, the estimated value of this settlement is $10,488,600, as well as improvement in its disclosures. (SA ¶ 1(aa), 1 (dd), 2, 3, 4, 4; Olsen Decl. ¶ 16.) Mr. Olsen has quantified the total possible damages in this matter, after accounting for overlap, equal $14,118,750.  (Olsen Decl. ¶ 13.)  Therefore, if one were to look at the total value of the settlement of $10,488,600, this means the proposed

- 17 -

settlement equals approximately 74.3% of the total possible damages.  Further,

even if one were to disregard the value derived from the future reduction in Reg E

fees arising from the re-opt-in requirement in this settlement, the value of this

settlement to date is $6,247,707, which is 44.2% of the total possible damages.

Courts have determined that settlements are, of course, reasonable where

Plaintiffs recover only a much smaller part of their actual losses.  *See Behrens v.

Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd 899 F.2d 21

(11th Cir. 1990) ("[T]he fact that a proposed settlement amounts to only a fraction

of the potential recovery does not mean the settlement is unfair or inadequate").

Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even -

a thousandth of a single percent of the potential recovery."  *Id*.; *see also City of

Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of

3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part,

rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *In re Currency Conversion

Fee*, 263 F.R.D. 110, at 124 (finding settlement amount that was less than one

percent of the potential damages was within the range of reasonableness even

though defendant "of substantial means").

### 2.     The Complexity, Expense, and Likely Duration of the Litigation

The second factor in the Sixth Circuit is the "complexity, expense, and likely

duration of the litigation."  "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with

them." *Brent v. Midland Funding, LLC*, No. 3:11- CV-1332, 2011 WL 3862363 at

*16 (N.D. Ohio Sept. 1, 2011).  Thus, "[i]n most situations, unless the settlement is

clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002)).

In this case, with regard to expected duration if a settlement were not approved, a motion for class certification, a motion for summary judgment, a trial, and likely appellate work by whichever side did not prevail at trial, are all expected, and all likely lasting years beyond today. (Kick Decl. ¶¶ 21, 22.)  In terms of costs, to continue with the case also would be very expensive. (Kick Decl. ¶ 22.) "Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement.  [T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The next factor set forth in *UAW* for approval of a proposed settlement is the stage at which the proceedings were settled and the discovery performed. *UAW*, 497 F.3d at 632.  As detailed in Section II, *supra*., "The History of This Case," this has been a case in which meaningful discovery has been performed, including sworn production of hundreds of pages of documents, Rule 30(b) depositions, the deposition of the class representative, and a fully briefed Motion to Dismiss. "The relevant inquiry with respect to [the third *UAW*] factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and

weaknesses of the claims and the adequacy of the settlement." *Gen. Motors*, 315 F.R.D. at 236.  This factor is satisfied.

### 4.   Judgement of Experienced Counsel

The fourth *UAW* factor to be considered is the recommendation of experienced counsel. Courts recognize that the opinion of experienced and knowledgeable counsel supporting settlement after vigorous, arm's-length negotiation is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *IUECWA*, 238 F.R.D. at 597 ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").

Class Counsel in this case are experienced in litigating consumer class actions and other complex matters, and have a particular expertise in overdraft fee class actions. (McCune Decl. ¶¶ 2-7; Kick Decl. ¶¶ 2-4.) They have investigated the factual and legal issues raised in this action, and are in favor of the settlement. (McCune Decl. ¶27; Kick Decl. ¶¶12, 21.)

### 5.   The Risk of Fraud or Collusion

The fifth of the seven factors listed by *UAW* for approval of a proposed settlement is the absence of collusion. *UAW*, 497 F.3d at 631. All of the settlement negotiations between the parties in this matter were conducted at arm's-length. (Kick Decl. ¶ 12.)  Further, the proposed Settlement is actually the result of a mediator's proposal made by the Hon. Gerald E. Rosen (Ret.) after an all-day mediation over which he presided on December 9, 2019. (Kick Decl. ¶ 12.)  At the end of that day of mediation, Judge Rosen made a mediator's proposal, which both

sides accepted.  (Kick Decl. ¶ 12.)

Courts recognize "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion." *See  Hillson v. Kelly Services, Inc.*, 2017 WL 279814 at *6 (E.D. Mich. January 23, 2017) (holding the use of a neutral, experienced mediator is an indication that the parties' agreement is non-collusive).

### 6.    Objections Raised by Class Members

The next *UAW* factor instruct to look at the reaction of the class to the proposed settlement.  Here, there are no objections to any aspect of the proposed settlement to date, and only six class members have elected to opt-out of the proposed settlement, meaning that more than 99.98% of the class members who received notice have elected to remain in the proposed settlement.  (Epiq Decl. ¶¶ 25, 26.)   Of note is that 2,110 class members have taken the time and energy to act affirmatively to make a claim, yet none has objected. (Epiq Decl. ¶ 22.) The Settlement Class's reaction here therefore provides additional strong support for approving the proposed settlement. *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. Oct. 10, 2003) (finding where "overwhelming majority of class members have elected to remain in the Settlement Class, without objection," the "reaction of the class," "demonstrates that the Settlement is fair, reasonable, and adequate.").

### 7.    Public Interest also Supports Final Approval

The final *UAW* factor also supports this Settlement. This is a consumer

- 21 -

settlement where members of this credit union will be receiving millions of dollars back in fees which they contend should not have been charged, will have improved disclosures, and will also save millions f dollars of fees in the future.  Further, the Sixth Circuit recognizes "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632. The Settlement furthers this policy. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

### 8.    Notice to The Settlement Class Satisfied FRCP Rule 23

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "To comport with the requirements of due process, notice must be reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). Here, as demonstrated by the contemporaneously filed declaration of the claims administrator Epiq, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements.  (Epiq Decl. ¶¶ 4-18, Exhibits A-D.)  Further, this Court's ordered notice program had a success rate of 98%.  (*Id.*, at ¶ 18).

### 9.    The Other Factors Set forth in Rule 23(e)(2)

As stated, Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

With regard to the first prong, the effectiveness of the method of distribution of the relief to the class members, as stated, Class Members who remain MSUFCU members at the time of the distribution will receive a credit to their accounts, and those Class Members who are not members of Defendant shall be sent a check. (SA ¶ 13(d)(iv)(8), (9).)  With regard to the second prong, attorneys' fees, as already discussed, the amount being sought is well within the range awarded in cases such as this one. With regard to the third prong, other agreements, there are none. (Kick Decl. ¶ 13.)  Finally, with regard to the last prong, the Class Members will receive awards *pro rata* to their damages. "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable." *In re Lloyds' Am. Trust Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002)

### B.    The Proposed Settlement Class Should Be Finally Certified

In granting preliminary approval, this Court already determined provisionally that all of the factors pursuant to Rule 23 and Sixth Circuit law make the proposed settlement class appropriate for certification.  Nothing has changed,

and it is appropriate for this Court to now grant final certification.

Plaintiff respectfully requests that the Court grant final approval of the settlement, the request for attorney's fees and costs, the request for approval of class administrator expenses, and the request for a service award to the class representative, in their entirety.

Dated: June 11, 2020                    Respectfully submitted,

                                        /s/ Richard D. McCune
                                        Richard D. McCune, *Pro Hac Vice*
                                        rdm@mccunewright.com
                                        **McCune • Wright • Arevalo LLP**
                                        3281 East Guasti Road, Suite 100
                                        Ontario, California 91761
                                        Telephone:  (909) 557-1250
                                        Facsimile:  (909) 557-1275

                                        Taras Kick, CA Bar No. 143379
                                        Taras@kicklawfirm.com
                                        THE KICK LAW FIRM, APC
                                        815 Moraga Drive
                                        Los Angeles, California 90049
                                        Telephone: 310-395-2988
                                        Facsimile: 310-395-2088
                                        Taras@Kicklawfirm.com

                                        Counsel for Plaintiff Tiffany K.
                                        Coleman-Weathersbee and the Class